FILED
2013 Aug-22  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION


| | | |
|---|---|---|
| MARK A. DOWDY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  3:10-cv-01228-HGD |
| | ) | |
| SUZUKI MOTOR CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants | ) | |


## MEMORANDUM OPINION

The above-entitled civil action is before the court on the Motion for Summary Judgment filed by defendants Suzuki Motor Corporation and American Suzuki Motor Corporation.  (Doc. 35).  Also for consideration is the Motion to Exclude the Testimony of Raymond Thompson filed by defendants.  (Doc. 58).  This matter is before the undersigned U.S. Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

On or about May 13, 2008, plaintiff Mark Dowdy was operating a 1999 Suzuki VL1500 motorcycle on State Route 5, near U.S. Highway 33, in Noble County, Indiana, when he was involved in a collision with a pickup truck, resulting in severe injuries to Mr. Dowdy.  Mr. Dowdy asserts that his injuries are the result of defects

in the design and manufacturing of the motorcycle.  In particular, he alleges that the secondary drive gear became fatigued, fractured and broken, causing the motorcycle's gear wheel to seize and the motorcycle to crash.  He also makes claims for negligent/wanton failure to warn of these defects, and breach of express/implied warranties pursuant to common law, the Indiana Products Liability Act (IPLA) and the Indiana Uniform Commercial Code.  (Doc. 1, Complaint).

## SUMMARY JUDGMENT STANDARD

Defendants American Suzuki Motor Corporation and Suzuki Motor Corporation (collectively "Suzuki") have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. Rule 56(a) (Dec. 2010).  Defendants, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrates the absence of a genuine issue of material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).  A genuine issue of material fact is shown when the non-moving

party produces evidence so that a reasonable factfinder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. In reviewing whether the non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the non-moving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## BACKGROUND INFORMATION

On May 13, 2008, plaintiff was operating his motorcycle southbound on State Route 5 in Noble County, Indiana, traveling to his place of employment, when he lost control of the subject motorcycle while navigating a curve. He crossed the center line of the road and collided at a high rate of speed with the front driver's side wheel area

of a northbound Dodge Ram 1500 pickup truck.  The truck weighed more than 6000 pounds while the motorcycle weighed less than 700 pounds.  Both sides agree that the motorcycle's rear wheel was skidding and not rotating for at least the last 106 **[160?]** feet before impact.

The rear wheel and the swing arm assembly of the motorcycle were displaced from the frame during the crash.  The impacted area houses numerous parts related to the operation of the motorcycle, including the universal joint which is a flexible coupling that allows power to be transferred  from the vehicle's motor to its rear wheel.  The universal joint is adjacent and connects directly to the secondary bevel gear shaft.

Following the crash, the secondary bevel gear shaft was found to be severed. Unfortunately, the universal joint was not collected from the accident scene and was apparently discarded by a clean-up crew after the accident through no fault of the plaintiff.  The plaintiff has no recollection of the crash itself.  (Dowdy Depo. at 83-84, 162).  However, plaintiff alleges that the secondary drive gear "became fatigued, fractured, and broken, causing the VL 1500's motorcycle gear wheel to seize and the motorcycle to crash."  (Doc. 1, Complaint, at ¶ 5).

The manner in which the motorcycle engine drives the rear wheel of the motorcycle is not disputed.  This motorcycle  has an internal drive train featuring two

sets of bevel gears that rotate and work to propel the motorcycle.  Toward the rear of the motorcycle's engine, one of these bevel gears, called the secondary bevel gear, turns while the motorcycle is being operated.  The secondary bevel gear features a carburized steel shaft, called the secondary bevel gear shaft, that runs through the gear and also rotates while the motorcycle is in operation.  The secondary bevel gear and the secondary bevel shaft are shown in Defendants' Exhibit F (Doc. 36-9).

As the secondary bevel gear and the secondary bevel gear shaft rotate, they transmit power to the universal joint, which is attached to the gear and shaft with a splined connection.  This universal joint sits inside the circular metal tubing of the swing arm assembly, where it rotates as part of the process that powers the motorcycle's rear wheel.  During operation of the motorcycle, the universal joint and a propeller shaft rotate in tandem inside the swing arm assembly's circular metal tubing to aid in powering the motorcycle's rear wheel.  The shaft of the swing arm assembly is round.  However, the assembly from the subject motorcycle, recovered from the scene of the wreck, reflects that it was crushed into an oval shape.  A photograph of this item is reflected in Doc. 36-10 (Defendants' Exhibit G) at Photograph 13.

One of the expert witnesses put forth by plaintiff is mechanical engineer Robert T. Tolbert.  In his report, Tolbert stated that he disassembled and inspected the

motorcycle to determine the cause of the Dowdy accident.  He noted that, during the

initial inspection of the motorcycle, the rear wheel was found to be locked in position.

According to Tolbert:

> The rear brake disc was deformed or "flexed" against the caliper from
> the impact damage, but it was solidly bound in place from the
> deformation and pressure exerted from the deformation.  Once the
> caliper was removed from the swing arm by removing the bolts and
> freeing the unit (requiring moderate force), the rear wheel then turned
> smoothly.  The caliper was inspected visually and no defects were
> discovered.  The free turning, smooth motion of the wheel was
> indicative there had been no major malfunction to cause the wheel to
> lock.

(Defendants' Ex. C, Report of Robert Tolbert, at 3).

> Mr. Tolbert also disassembled the secondary gear assembly, stating:

> The next part was the secondary gear assembly, (consisting of a cast iron
> housing, one larger bearing, one smaller bearing, shaft, gear and
> retaining collar) housed inside an aluminum housing on the left-hand
> rear upper side of the crank case/transmission housing as viewed from
> the rear of the motorcycle toward the front.  The stub shaft of the output
> side of the secondary gear was found to be fractured or broken, and the
> stub portion of the shaft missing.

(*Id.* at 3).

> With regard to the cause of the accident, he concluded as follows:

> Until the time of the accident, the engine end of the universal joint had
> been constrained by the output shaft to spin concentrically on the output
> shaft.  Once the output shaft failed at the fracture point (discussed in
> Thompson's report), the end of the universal joint and the stub end of
> the failed output shaft pivoted or shifted to one side due to the

centrifugal force caused by the mass of the two that were no longer constrained to spin concentrically, in balance. As the end of the output shaft and the engine end of the universal pivoted and/or shifted to one side, still rotating due to the motion of the motorcycle which kept the drive shaft turning, the free end of the fractured output shaft and universal joint contacted the inside surface of the drive shaft tube that comprises the swing arm. As the forward half (or engine side) of the universal joint and broken output shaft contacted the inside of the drive shaft tube, it forced the rear half of the universal joint and the drive shaft to be forced in the opposite direction, against the opposite wall of the drive shaft tube. Both the universal joint and drive shaft normally spin concentrically and in balance, both constrained in place by the universal joint attached to the output shaft from the engine/transmission combination and the other end attached to the drive shaft.

The universal joint and drive shaft were still spinning for some short period of time  due to the motion of the motorcycle and the rotation of the rear wheel turning the drive shaft. As the rotating components contacted the sides of the tube, they began to slide against the tube for a period of time (probably very short period of time), but the drive shaft tube is oval, NOT round. The components could not rotate freely because  as they rotated, there was sufficient clearance in the major axis of the oval (big direction), but insufficient clearance in the minor axis of the oval (small direction). The universal joint folded or pivoted sufficiently in the major axis of the oval then had insufficient clearance in the minor axis of the oval, so the universal joint was bound and prevented the drive shaft from turning. It simply locked up. When the drive shaft could not turn, the rear wheel could not turn and then locked (as discussed above), causing Dowdy to not be able to fully control the motorcycle.

(*Id.* at 6) (emphasis in original).

In short, Tolbert opines that the output shaft of the secondary gear assembly

broke, causing the universal joint and drive shaft to spin freely inside the swing arm

assembly until they became jammed due to the oval shape of the swing arm assembly,

resulting in the rear tire seizing up and causing  a loss of control and the motorcycle

to crash.

In his testimony, Tolbert elaborated on these conclusions as follows:

Q.  I guess – are you offering an opinion that the swing arm tube is defective because of – it allows this wedging to occur that we're talking about?

A.  It would be better *if it was round, then that wouldn't be possible.*

Q.  Just so I am understanding that, you are saying that if the swing arm tube that we are looking at in Exhibit 7, if it's round instead of oval, then the wedging would not be possible so it would be better?

A.  Yes.

(Tolbert Depo. at 153-54) (emphasis added).

Q.  . . . [A]re you criticizing the design and manufacture of any other aspect of this motorcycle?  I mean, we talked about the swing arm tube earlier.  But anything else?

A.  Well, the swing arm tube being oval in the event that a failure like this occurs, the – it cannot rotate.  It binds itself up.

Q.  If this [secondary bevel gear shaft] fractures where you say this one fractured and how it fractured, but if the U-joint does not come off, if it stays in place, for whatever reason, obviously, it would not cause the rear tire to lock up?

A.  If – if that had fractured there and let's say for some reason that the stub shaft had stayed in that seal and just rotated . . . assuming that for some reason or another the end of the stub shaft stayed in that seal, then

it would just rotate and make noise and the motorcycle wouldn't go anywhere. It –

Q. Because the motorcycle – the reason it wouldn't go anywhere is you are accelerating, but the power from the engine is not getting to the propeller shaft?

A. It would spin this, but not from there back.

(*Id.* at 161-62).

Furthermore, during his testimony, Mr. Tolbert stated that the rear disk brake is actuated by the driver activating it with his right foot. By applying the brake in this manner, it would also be possible for the rear tire to be locked up. (*Id.* at 73-74). He also testified that the skid marks on the road resulting from the driver actuating the rear brake would look essentially the same as the skid mark created by the rear wheel locking up in the manner he described. (*Id.* at 85-86).

## DISCUSSION

The first argument in favor of summary judgment put forth by defendants is that plaintiff has failed to establish the proximate cause of the accident that resulted in plaintiff's injuries. Under Indiana law,

"Proximate cause" has two components: causation-in-fact and scope of liability. *City of Gary ex rel. King v. Smith & Wesson Corp*., 801 N.E.2d 1222, 1243-44 (Ind. 2003). To establish factual causation, the plaintiff must show that but for the defendant's allegedly tortious act or omission, the injury at issue would not have occurred. *Id*. The scope of liability doctrine asks whether the injury was a natural and probable

consequence of the defendant's conduct, which in the light of the circumstances, should have been foreseen or anticipated. *Id.* at 1244. Liability is not imposed on the defendant if the ultimate injury was not reasonably foreseeable as a consequence of the act or omission. *Id.* Causation-in-fact is ordinarily a factual question reserved for determination by the jury. *Id.* at 1243-44. However, where reasonable minds cannot disagree as to causation-in-fact, the issue may become a question of law for the court. *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004).

*Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197-98 (Ind. 2009).

"Only in plain and indisputable cases, where only a single inference or conclusion can be drawn, are the questions of proximate cause and intervening cause matters of law to be determined by the court." *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004). Defendants argue that plaintiff cannot prove causation because his own expert has testified that the universal joint would not have become wedged if the swing arm had been round, rather than oval.

Plaintiff's expert, Robert Tolbert, had opined that the oval shape of the tube caused the loose universal joint to become wedged inside the tube.[1]  Plaintiff acknowledges that Tolbert was mistaken as to the pre-collision shape of the swing arm tube. It was round, not oval. However, plaintiff asserts that Tolbert's overall

---

[1] The manner in which the secondary bevel gear shaft came to be broken, either by design defect or by impact during the wreck, is largely irrelevant unless it contributed to the universal joint becoming wedged in the swing arm assembly, which plaintiff asserts was the cause of the accident. Because the Court finds that there is no evidence of causation as set out below, it is unnecessary to address this issue.

theory, that the fracturing of the shaft caused the universal joint to become loose, causing it to become wedged inside the tube, is still valid because "with an oval tube, wedging had to occur and, with a round tube, wedging *could* occur." (Doc. 38, Plaintiff's Brief in Opposition to Summary Judgment, at 21) (emphasis added). Plaintiff asserts that, despite his error regarding the shape of the tube, Tolbert found other physical evidence of wedging - marking or scarring inside the tube - reflecting that the universal joint became wedged regardless of the tube's shape. (*Id.*). Furthermore, plaintiff asserts that, while the oval shape may not explain the wedging, defendants did not prove that a loose universal joint could never wedge inside a round tube. (*Id.* at 22).

While plaintiff alleges that wedging *could* occur in the swing arm even though it was round, he has failed to demonstrate how that is possible. Plaintiff's expert, Mr. Tolbert, clearly testified that, if the swing arm had been round, the wedging "wouldn't be possible." (Tolbert Depo. at 154). It *was* round. Plaintiff now attempts to resuscitate his case against defendants by claiming that this statement is wrong and the wedging could have occurred even though the swing arm assembly is unquestionably round in shape. The problem with this argument is that plaintiff's own expert witness contradicts this claim. Mr. Tolbert identified marks and scarring on the inside of the swing arm assembly as having been caused by the universal joint

turning inside the assembly until it became wedged in the assembly's narrow or minor aspect.  Since the assembly is round rather than oval, it has no narrow aspect in which the universal joint could have become wedged.  This leaves plaintiff to speculate that the marks must have been made as a result of the universal joint somehow becoming wedged in the round assembly tube, despite his own expert's testimony that this could not happen.

"When the moving party has carried its burden under Rule 56(c)[2], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).   Under the evidence presented here, plaintiff has provided nothing beyond speculation regarding the cause of the accident and has, therefore, failed to establish a genuine issue of material fact as to causation.  Because proof of causation is an essential element for each of plaintiff's claims, defendants' motion for summary judgment is due to be granted.  Because summary judgment is due to be granted on this ground, defendants' other motion, to exclude the testimony of Raymond Thompson, is rendered moot.

---

[2] Fed.R.Civ.P. 56 was amended in 2010.  The essence of the section of the old Rule 56(c) referenced in the case cited above is now found in Rule 56(a).

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 22nd day of August, 2013.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE